EASTERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT
--------------------------------------------------------------------------X
VALINA OSWALD,

               Plaintiff,

                                  Docket No.: 26-cv-00801

   - against -

CASTLE SENIOR LIVING, AVI LUSTIG, and
ABE SCHUSTER,

               Defendants.
--------------------------------------------------------------------------X

Plaintiff VALINA OSWALD ("Oswald" or "Plaintiff"), by and through her attorneys, McKinley Onua & Associates, PLLC, as and for her complaint against Castle Senior Living, Avi Lustig and Abe Schuster (collectively "Defendants") respectfully alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action for damages and equitable relief based on Defendants' violations of Plaintiff's rights under: (i) the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215(a)(3); (ii) the anti-retaliation provisions of New York Labor Law ("NYLL"), NYLL §215; (iii) the NYLL's requirement for timely payment of wages under §191(d) and §198(1-a); and (iv) the NYLL's requirement for employers to provide accurate wage statements on each payday, NYLL §195(3).

2.    Plaintiff worked for Defendants for years and repeatedly complained that she was not being paid the commissions she earned. Defendants retaliated against her by demoting her, suspending her, forcing her to train her replacement, removing commissions from her compensation, and ultimately terminating her employment. Defendants also failed to pay commissions earned after October 2023.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 because Plaintiff asserts claims under the FLSA, 29 U.S.C. §201 et seq. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

5.      At all relevant times, Plaintiff Oswald was employed by Defendants and resided in Kings County.

6.      Defendant Castle Senior Living is a state-licensed Medicaid program located in Forest Hills, Queens.

7.      Defendant Avi Lustig is the owner of Castle Senior Living and manages its day-to-day operations.

8.      Defendant Abe Schuster served as the Administrator of Castle Senior Living and oversaw daily operations.

9.      At all relevant times, Defendants were employers within the meaning of the FLSA and NYLL.  Defendant Castle Senior Living had annual revenue exceeding $500,000 and engaged in interstate commerce, employing two or more employees and utilizing goods such as chairs, tables, beds, bedding, and kitchen equipment, etc., that originated outside the State of New York.

2

**BACKGROUND FACTS**

10.    Plaintiff began working for Castle Senior Living in October 2017 as a receptionist.

11.    She was promoted to Marketing Director in 2019, later demoted to Assistant Director, and then terminated in 2024.

12.    Plaintiff was responsible for recruiting residents and collaborating with hospitals, nursing homes, and other institutions.

13.    In October 2022, Defendant Lustig acquired Castle Senior Living. After the takeover, Defendants acknowledged Plaintiff's existing compensation agreement, including her commission structure, and did not provide or negotiate any new contract.

14.    At that time, Plaintiff was Director of Marketing and Admissions, a role in which she was responsible for generating admissions, conducting tours, meeting with referral sources, and coordinating resident onboarding.

15.    Until February 2024, Plaintiff routinely worked from approximately 9 a.m. to 11 p.m.

16.    Plaintiff received a base salary of $50,000 per year.

17.    For years, Defendants paid Plaintiff commissions for successful admissions, consistent with past practice and assurances from management. Plaintiff earned commissions of $300 per private uninsured resident and $275 per insured resident who stayed at least 30 days.

18.    Plaintiff regularly worked extended hours to maximize resident recruitment and earn commissions.

19.    Beginning in 2023, Plaintiff stopped receiving commissions she had earned. As of October 2023, Plaintiff calculated that Defendants owed her approximately $19,100 in unpaid commissions.

20.    Plaintiff repeatedly raised this issue with management, including Lustig and Schuster. Although management assured her that she would be paid in December 2023, she was not.

21.    In January 2024, Plaintiff emailed Defendants stating that withholding her earned wages violated the Labor Law. Immediately after this complaint, management became hostile toward her, accused her of making "baseless" allegations, and ignored her attempts to meet.

22.    After several complaints and meetings, Defendants agreed to pay the outstanding $19,100 in three installments, but then failed to honor that agreement.

23.    In February 2024, Plaintiff received only $4,775 instead of the agreed-upon $6,366.67, leaving an outstanding balance of $14,325.01 for the commissions owed through October 2023.

24.    Defendants did not provide any accurate wage statement or written accounting identifying which commissions were included in the payment.

25.    After repeated complaints and significant delay, Defendants eventually paid Plaintiff the previously calculated $19,100 in commissions. However, Defendants failed to pay any of the commissions Plaintiff earned after the $19,100 was finally paid, despite her continued performance under the same commission structure. These subsequent commissions remain unpaid.

26.    Plaintiff informed Defendants that she had no new contract and remained entitled to commissions under her existing agreement.

27.    In retaliation, Defendants berated her, removed commission payments from her contract, and demoted her.

28.    Defendant Schuster then required Plaintiff—who was a salaried employee—to clock in and out, a requirement not imposed on other salaried employees.

4

29.     Schuster further threatened Plaintiff that if she continued written complaints, "it would backfire", which Plaintiff reasonably perceived as retaliatory.

30.     On March 4, 2024, Plaintiff was demoted from Marketing Director to Assistant Director and ordered to train her replacement.

31.     Plaintiff filed grievances regarding the misuse of authority and discrimination. Defendants dismissed her complaints.

32.     Soon after Plaintiff raised concerns about discrimination and wage violations, Defendants posted a public job advertisement for a new Marketing Director—at a higher salary— while requiring Plaintiff to train the new hire and falsely raising performance issues that had never before been raised.

33.     Defendants then stripped Plaintiff of essential job duties, barred her from performing external marketing, questioned her professional competence, and confined her to an "inside only" role reporting to a newly hired supervisor.

34.     On March 25, 2024, Plaintiff was suspended for allegedly not responding to an email while she was on sick leave.

35.     During her suspension, Plaintiff was locked out of her office and email.

36.     When Plaintiff returned on March 29, 2024, she was again demoted and pressured to sign a new contract immediately. When she requested time to review it, Defendants suspended her without pay and instructed her to sign the contract by April 8, 2024, or be terminated.

37.     During the second suspension, Plaintiff was locked out of all systems, and her office had been cleared.

38.     Defendants' retaliatory conduct escalated until they terminated Plaintiff in April 2024. Prior to her protected activity, Plaintiff had never been disciplined, suspended, or warned,

and had never been informed of performance concerns. The adverse actions began only after her wage and discrimination complaints.

39.     On April 1, 2024, Plaintiff learned through a voicemail from a resident's family member that management had informed them she was terminated.

*40.*     As of the filing of this Complaint, Plaintiff still has not received the commissions she earned after the $19,100 balance was paid.

41.     Defendants failed to provide Plaintiff with accurate wage statements reflecting her hours worked and the basis for calculating commissions.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of FLSA*

42.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43.     Under 29 U.S.C. § 215(a)(3), the law prohibits employers from retaliating against employees for complaining about violations of the FLSA. It clarifies that this protection is not limited to formal, written complaints but extends to oral complaints made to employers as well, as noted by the case *Greathouse v. JHS Security, Inc,* 784 105, 115 (2d Cir. 2015).

44.     Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of FLSA.  At all relevant times, Plaintiff was Marketing Director and later Assistant Director and Defendants were employers within the meaning of 29 U.S.C. §203.

45.     The Plaintiff claims that after engaging in protected activity by making a complaint related to FLSA violations, the Defendants retaliated by demoting the Plaintiff, terminating their employment, and withholding earned commissions, amongst other things.

46.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm, for which Plaintiff is entitled to an award of monetary damages and other relief.

47.     The Plaintiff seeks compensatory damages, liquidated damages, and attorneys' fees as provided under the FLSA for retaliation.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYLL*

48.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

*49.*     Under NYLL §215(1)(a), an employer is prohibited from discriminating or retaliating against an employee who makes complaints regarding violations of the NYLL. Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of NYLL §190, as she was the Marketing Director and later Assistant Director at Castle Senior Living.

50.     Defendants are considered employers under NYLL, and the Plaintiff is an employee protected under this law.

51.     After engaging in protected activity (e.g., complaining about employer violations), the Defendants retaliated by terminating the Plaintiff's employment and withholding owed commissions.

52.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer, economic harm, for which Plaintiff is entitled to monetary damages and other relief.

53.     Plaintiff demands compensatory, punitive, and liquidated damages, as well as attorneys' fees for the harm caused by the Defendants' retaliatory conduct.

*54.*     Plaintiff has served this Complaint and thus provided notice upon the Office of the New York State Attorney General, as required pursuant to NYLL §215(b)(2).

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Timely Commissions Under NYLL*

55.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56.     Pursuant to NYLL § 191(d), an employer must pay a worker's earned wages in accordance with the agreed-upon terms of employment, but not less frequently than semi-monthly or on regularly designated paydays established in advance by the employer.

57.     NYLL § 198(1-a) further provides that, in any action brought by an employee to recover wages, the court shall allow the employee to recover the full amount of any underpayment, along with reasonable attorneys' fees, prejudgment interest as required under the CPLR, and, unless the employer demonstrates a good faith basis for its wage practices, an additional amount as liquidated damages equal to 100% of the total wages found to be due.

58.     As set forth above, Defendants qualify as employers under the meaning of the NYLL, while Plaintiff qualifies as an employee under the same statute.

59.     Defendants and Plaintiff entered into an agreement regarding Plaintiff's compensation, which included the payment of commissions in accordance with the established terms of employment.

60.     Defendants failed to pay Plaintiff the commissions owed to her in violation of the agreed-upon terms of employment.

61.    Plaintiff is entitled to recover the full amount of commissions owed to her, as well as liquidated damages, prejudgment interest, and reasonable attorneys' fees, due to Defendants' violations of the NYLL.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

62.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63.    New York Labor Law ("NYLL") §195(3) mandates that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when wages are paid.

64.    As described above, Defendants, on receipt of commissions, failed to provide Plaintiff with wage statements that complied with NYLL §195(3). These wage statements failed to include the required criteria, including but not limited to the accurate classification of commission payments.

65.    Pursuant to NYLL §198(1-d), Defendants are liable to Plaintiff in the amount of $250 for each workday the violation persisted, up to the statutory maximum of $5,000.

### DEMAND FOR JURY TRIAL

66.    Pursuant to Federal Rule of Civil Procedure 38 (b), Plaintiff demands a trial by jury on all claims in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a.    A declaratory judgment declaring the defendants' practices unlawful under U.S. and New York State laws;

9

b.  Preliminary and permanent injunctions to stop Defendants and their associates from continuing the alleged unlawful practices;

c.  Compensatory damages for lost wages, benefits, commissions, and emotional distress caused by retaliatory conduct;

d.  Unpaid wages and any shortfall due to alleged unlawful payment practices;

e.  Liquidated damages and other penalties recoverable under the New York Labor Law (NYLL);

f.  Punitive damages as allowed by law;

g.  Attorneys' fees, expert witness fees, and other costs of this litigation;

h.  Pre-judgment and post-judgment interest; and

i.  Any other relief deemed necessary and proper by the court.

Dated: New York, New York
February 11, 2026

Respectfully submitted,

MCKINLEY ONUA & ASSOCIATES

*/s Nnenna Onua*

By:  _____

Nnenna Onua
*Attorney for Plaintiff*
233 Broadway, Suite 2348
New York, NY 10279
(718) 522-0236